

**CORPORATION SERVICE COMPANY**

# Notice of Service of Process

SLM / ALL
Transmittal Number: 6024374
Date Processed: 09/08/2008

| | |
|---|---|
| Primary Contact: | Pamela Hoff<br>The Travelers Companies, Inc.<br>385 Washington Street,  MC 515A<br>Saint Paul, MN 55102 |
| Copy of transmittal only provided  to: | SOP Coordinator |

| | |
|---|---|
| **Entity:** | Travelers Casualty and Surety Company<br>Entity ID Number  2317366 |
| **Entity Served:** | Travelers Casualty and Surety Company |
| **Title of Action:** | New Canochet Cliffs, L.P. vs. Vincent J. Naccrato, as Executor of the Estate of Lloyd Baker |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court:** | Washington County Superior Court, Rhode Island |
| **Case Number:** | WC2007-0478 |
| **Jurisdiction Served:** | Connecticut |
| **Date Served on CSC:** | 09/08/2008 |
| **Answer or Appearance Due:** | 20 Days |
| **Originally Served On:** | Travelers on 09/08/2008 |
| **How Served:** | Client Direct |
| **Plaintiff's Attorney:** | Neil P. Philbin<br>401-782-1190 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

*CSC is SAS70 Type II certified for its Litigation Management System.*

2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com

STATE OF RHODE ISLAND  AND PROVIDENCE PLANTATIONS

## SUPERIOR COURT



___ **Providence County**
Licht Judicial Complex
250 Benefit Street
Providence, Rhode Island 02903

___ **Newport County**
Murray Judicial Complex
45 Washington Square
Newport, Rhode Island 02840

___ **Kent County**
Kent County Judicial Complex
222 Quaker Lane
Warwick, Rhode Island 02886

_x_ **Washington County**
McGrath Judicial Complex
4800 Tower Hill Road
Wakefield, Rhode Island 02879

Hopkinton Housing Association
Hopkinton Village
New Canonchet Cliffs, L.P.
........................................................ **Plaintiff**
Lloyd Baker, Housing Systems, Inc
Promac, Inc., Joel S. Ario, Liquidator
of Reliance Insurance, Traveler
........................................................ **Defendant**

CIVIL ACTION, FILE No. WC2007 - 0478

*Summons*   CORPORATE LITIGATION HARTFORD

SEP 08 2008

RECEIVED PM

*To the above-named Defendant:*

The above-named Plaintiff has brought an action against you in said Superior Court in the county indicated above. You are hereby summoned and required to serve upon Neil Philbin, Esq. Plaintiff's attorney, whose address is 1058 Kingstown Road, P.O. Box 3727 Peace Dale, R.I. 02883  401 782 1190 an answer to the complaint which is herewith served upon you within 20 days after service of this summons upon you, exclusive of the day of service.

If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint. Your answer must also be filed with the court.

As provided in Rule 13(a) unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will thereafter be barred from making such claim in any other action.

........................................................
CLERK

Dated: ........ *Sept 5, 2008*

**(Seal of the Superior Court)**

S-135 (REV. 02/07)

Neil P. Philbin
Attorney at Law
1058 Kingstown Road
P.O. Box 3727
Peace Dale, R.I. 02883

Tel: (401) 782-1190
Tel: (401) 741-1956
Fax: (401) 782-1240
*nphilbin5305@yahoo.com*

## FAX COVER SHEET

From: Neil P. Philbin, Esquire

Date:   September 16, 2008

To:    Charcretia DiBartolo

Fax:  617 213 7001

Re:
NEW CANOCHET CLIFFS, L.P.,
(substituted for the plaintiffs
Hopkinton Housing Association, Inc.
and Hopkinton Village, Inc.)

PLAINTIFF

vs.                          C.A. NO. WC2007 - 0478

Vincent J. Naccarato, Esq., as Executor of the
Estate of Lloyd Baker (substituted for the defendant Lloyd Baker),
Housing Systems, Inc., Promac, Inc.,
Travelers Casualty and Surety Company and
Joel S. Ario, Acting Insurance Commissioner
of the Commonwealth of Pennsylvania,
in his official capacity as Liquidator of
Reliance Insurance Company

DEFENDANTS

### *MESSAGE*

Ms. DiBartolo :

As requested.

Neil P. Philbin

DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

AMENDMENT TO AIA DOCUMENT B181, STANDARD FORM OF AGREEMENT
BETWEEN OWNER AND ARCHITECT FOR HOUSING SERVICES

The provisions of this amendment supersede and void all inconsistent
provisions of the Agreement.

1. The Owner and the Architect represent that they are familiar with
HUD/FHA requirements, including the Minimum Property Standards, as set
forth in publications given to them by HUD/FHA for this Project and
will perform all services in accordance with the applicable
requirements of HUD/FHA.

2. The Owner and the Architect recognize the interest of HUD/FHA and any
action or determination by either the Owner or the Architect is
subject to acceptance or rejection by HUD/FHA.

3. No portion of the Architect's Services and responsibilities or the
Owner's responsibilities shall be sublet or delegated to anyone not
acceptable to HUD/FHA.

4. The Architect will advise HUD/FHA as well as the Owner of any
omissions, substitutions, defects and deficiencies observed in the
work of the Contractor.

5. The Architect shall issue Certificates of Payment and Certificates of
Substantial Completion. These certificates shall be in the form
prescribed by HUD/FHA.

6. The Architect will furnish copies of all field orders to HUD/FHA in
addition to the owner.

7. The agreement shall not be terminated without five days prior written
Notice to HUD/FHA.

8. The Owner and the Architect shall recognize as a valid reason for
termination, any request by HUD/FHA for termination because of
inadequate performance, undue delay or misrepresentation which may
make the further services of the Architect unacceptable to HUD/FHA.

9. If the project for which the drawings and specifications prepared by
the Architect has not been completed and there is a default or
foreclosure, HUD/FHA may use the drawings and specifications to
complete construction of the project without additional cost.

OWNER _Brenda Pukas_

DATE _31 Oct 1983_

ARCHITECT _P. Baber_

DATE _31 Oct '83_

WARNING: U.S. Criminal Code, Section 1001, Title 18 U.S.C. provides
as follows: Whoever, in any matter within the jurisdiction of any
department or agency of the United States knowingly and willfully
falsified, conceals or covers up by any trick, scheme or device a
material fact, or makes or uses any false writing or document knowing
the same to contain any false, fictitious or fraudulent statement or
entry, shall be fined not more than $10,000 or imprisoned not more
than five years, or both.

PLAINTIFF'S EXHIBIT A

# THE AMERICAN INSTITUTE OF ARCHITECTS



*AIA Document B181*

# Standard Form of Agreement Between
# Owner and Architect For Housing Services

## WITH COST ESTIMATING SERVICES PROVIDED BY OWNER

### 1978 EDITION

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES; CONSULTATION WITH
AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION*

## AGREEMENT

made as of the                    /8 day of December                    in the year of Nineteen
Hundred and 83

BETWEEN the Owner:          HOPKINTON HOUSING ASSOCIATION INC.
                            HOPE VALLEY, RI 02832

and the Architect:          L.A. BAKER AIA ARCHITECT
                            POTTER HILL RD.
                            WESTERLY, RI 02891

For the following Project:
*(include detailed description of Project location and scope.)*

                            TO PROVIDE ARCHITECTURAL AND SUPERVISORY SERVICES FOR
                            THE HOPKINTON HOUSING FOR THE ELDERLY.

The Owner and the Architect agree as set forth below.

Copyright © 1978 by The American Institute of Architects, 1735 New York Avenue, N.W., Washington, D.C. 20006. Reproduction of the material herein or substantial quotation of its provisions without permission of the AIA violates the copyright laws of the United States and will be subject to legal prosecution.

AIA DOCUMENT B181 • OWNER-ARCHITECT AGREEMENT FOR HOUSING SERVICES • JUNE 1978 EDITION • AIA®
© 1978 • THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006                    B181-1978    1

> Terms and Conditions of Agreement Between Owner and Architect

## ARTICLE 1
### ARCHITECT'S SERVICES AND RESPONSIBILITIES

The Architect's Basic Services are as described under the four Phases identified below and in Article 10, and unless otherwise provided in Article 10 include normal structural, mechanical and electrical engineering services.

### 1.1 DESIGN PHASE

1.1.1  The Architect shall review with the Owner alternative approaches to design and construction of the Project.

1.1.2  Based on the mutually accepted program, the Architect shall prepare, for approval by the Owner, Design Documents consisting of drawings and other documents appropriate for the Project.

### 1.2 CONSTRUCTION DOCUMENTS PHASE

1.2.1  Based on the approved Design Documents, the Architect shall prepare, for approval by the Owner, Construction Documents consisting of Drawings and Specifications setting forth in detail the requirements for the construction of the Project.

1.2.2  The Architect shall assist the Owner in connection with the Owner's responsibility for filing documents required for the approval of governmental authorities having jurisdiction over the Project. .

### 1.3 BIDDING OR NEGOTIATION PHASE

1.3.1  Unless provided in Article 10, the Architect, following the Owner's approval of the Construction Documents, shall assist the Owner in obtaining bids or negotiated proposals and in awarding contracts for construction.

### 1.4 CONSTRUCTION PHASE—ADMINISTRATION OF THE CONSTRUCTION CONTRACT

1.4.1  The Construction Phase will commence with the award of the Contract for Construction and will terminate when final payment to the Contractor is due, or in the absence of a final Certificate for Payment or of such due date, sixty days after the Date of Substantial Completion of the Work, whichever occurs first.

1.4.2  Unless otherwise provided in this Agreement and incorporated in the Contract Documents, the Architect shall provide administration of the Contract for Construction as set forth below and in the edition of AIA Document A201, General Conditions of the Contract for Construction, current as of the date of this Agreement.

1.4.3  The Architect shall be a representative of the Owner during the Construction Phase. Instructions to the Contractor shall be forwarded through the Architect.

1.4.4  The Architect shall visit the site at intervals appropriate to the stage of construction or as otherwise agreed by the Architect in writing to become generally familiar with the progress and quality of the Work and to determine in general if the Work is proceeding in accordance

with the Contract Documents. However, the Architect shall not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. On the basis of such on-site observations as an architect, the Architect shall keep the Owner informed of the progress and quality of the Work, and shall endeavor to guard the Owner against defects and deficiencies in the Work of the Contractor.

1.4.5  The Architect shall not have control or charge of and shall not be responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work, for the acts or omissions of the Contractor, Subcontractors or any other persons performing any of the Work, or for the failure of any of them to carry out the Work in accordance with the Contract Documents.

1.4.6  The Architect shall at all times have access to the Work wherever it is in preparation and progress.

1.4.7  The Architect shall determine the amounts owing to the Contractor based on observations at the site and on evaluations of the Contractor's Applications for Payment, and shall issue Certificates for Payment in such amounts.

1.4.8  The issuance of a Certificate for Payment shall constitute a representation by the Architect to the Owner, based on the Architect's observations at the site as provided in Subparagraph 1.4.4 and on the data comprising the Contractor's Application for Payment, that, to the best of the Architect's knowledge, information and belief, the Work has progressed to the point indicated; the quality of the Work is in accordance with the Contract Documents (subject to an evaluation of the Work for conformance with the Contract Documents upon Substantial Completion, to the results of any subsequent tests required by or performed under the Contract Documents, to minor deviations from the Contract Documents correctable prior to completion, and to any specific qualifications stated in the Certificate for Payment); and that the Contractor is entitled to payment in the amount certified. However, the issuance of a Certificate for Payment shall not be a representation that the Architect has made any examination to ascertain how and for what purpose the Contractor has used the moneys paid on account of the Contract Sum.

1.4.9  The Architect shall be the Interpreter of the requirements of the Contract Documents and the judge of the performance thereunder by both the Owner and Contractor, and shall render written decisions on all claims, disputes and other matters in question between the Owner and the Contractor. In the capacity of interpreter and judge, the Architect shall endeavor to secure faithful performance by both the Owner and the Contractor, shall not show partiality to either, and shall not be liable for the result of any interpretation or decision rendered in good faith in such capacity.

1.4.10  The Architect shall have authority to reject Work which does not conform to the Contract Documents, and will have authority to require special inspection or testing of the Work whenever, in the Architect's reasonable opin-

tion, it is necessary or advisable for the implementation of he intent of the Contract Documents.

**1.4.11** The Architect shall review and approve or take other appropriate action upon the Contractor's submittals such as Shop Drawings, Product Data and Samples, but only for conformance with the design concept of the Work and with the information given in the Contract Documents. Such action shall be taken with reasonable promptness so as to cause no delay. The Architect's approval of a specific item shall not indicate approval of an assembly of which the item is a component.

**1.4.12** The Architect shall prepare Change Orders for the Owner's approval and execution, and shall have authority to order minor changes in the Work not involving an adjustment in the Contract Sum or an extension of the Contract Time.

**1.4.13** The Architect shall conduct inspections to determine the Dates of Substantial Completion and final completion, and shall issue a final Certificate for Payment.

**1.4.14** The extent of the duties, responsibilities and limitations of authority of the Architect as the Owner's representative during construction shall not be modified or extended without written consent of the Owner, the Contractor and the Architect.

**1.5    ADDITIONAL SERVICES**

**1.5.1** Additional Services shall be provided if authorized or confirmed in writing by the Owner or if included in article 10, and they shall be paid for by the Owner as provided in this Agreement.

**1.5.2** If the Owner and the Architect agree that more extensive representation at the site than is described in Paragraph 1.4 shall be provided, such additional project representation shall be provided and paid for as set forth in Article 10.

**1.6    TIME**

**1.6.1** The Architect shall perform services as expeditiously as is consistent with professional skill and care and the orderly progress of the Work.

## ARTICLE 2
### THE OWNER'S RESPONSIBILITIES

The following services and responsibilities, and any others so indicated in Article 10, shall be undertaken by the Owner.

**2.1**    The Owner shall provide full information including a program, which shall set forth the Owner's design objectives, constraints and criteria.

**2.2**    The Owner shall furnish a legal description and a certified land survey of the site and the services of soil engineers or other consultants when such services are deemed necessary by the Architect. Such services shall include topographic surveys, test borings, test pits, soil bearing values, percolation tests, air and water pollution tests, ground corrosion and resistivity tests, including necessary operations for determining subsoil, air and water conditions, with reports and appropriate professional recommendations.

**2.3**    The Owner shall furnish structural, mechanical, chemical and other laboratory tests, inspections and re-

ports as required by law or the Contract Documents.

**2.4**    The Owner shall furnish all legal, accounting and insurance counseling services as may be necessary at any time for the Project, including such auditing services as the Owner may require to verify the Contractor's Applications for Payment or to ascertain how or for what purposes the Contractor uses the moneys paid by the Owner.

**2.5**    The Owner, unless otherwise provided in Article 10, shall furnish all legal, accounting, planning, estimating and other services and expenses required to prepare, present and process any application for governmental or private financing, mortgage insurance or subsidy.

**2.6**    The Owner, unless otherwise provided in Article 10, shall furnish the services of a cost consultant or cost estimator to provide all construction cost data, Statements of Probable Construction Cost or other cost estimates as the Architect's work progresses.

**2.7**    The services, information, surveys and reports required by Paragraphs 2.2 through 2.6 inclusive shall be furnished at the Owner's expense, and the Architect shall be entitled to rely upon the accuracy and completeness thereof.

**2.8**    If the Owner observes or otherwise becomes aware of any fault or defect in the Project or nonconformance with the Contract Documents, prompt written notice thereof shall be given by the Owner to the Architect.

**2.9**    The Owner shall furnish required information and shall render approvals and decisions as expeditiously as necessary for the orderly progress of the Architect's services and of the Work.

## ARTICLE 3
### CONSTRUCTION COST

**3.1    DEFINITION**

**3.1.1** The Construction Cost shall be the total cost or estimated cost to the Owner of all elements of the Project designed or specified by the Architect.

**3.1.2** The Construction Cost shall include at current market rates, including a reasonable allowance for overhead and profit, the cost of labor and materials furnished by the Owner and any equipment which has been designed, specified, selected or specially provided for by the Architect.

**3.1.3** Construction Cost does not include the compensation of the Architect and the Architect's consultants, the cost of the land, rights-of-way, or other costs which are the responsibility of the Owner as provided in Article 2.

**3.2    RESPONSIBILITY FOR CONSTRUCTION COST**

**3.2.1** It is recognized that neither the Architect nor the Owner has control over the cost of labor, materials or equipment, over the Contractor's methods of determining bid prices, or over competitive bidding, market or negotiating conditions. Accordingly, the Architect cannot and does not warrant or represent that bids or negotiated prices will not vary from any Statement of Probable Construction Cost or other cost estimate or evaluation. Any Project budget shall be adjusted to reflect any change in the general level of prices in the construction industry between the date of submission of the Construc-

AIA DOCUMENT B101 · OWNER-ARCHITECT AGREEMENT FOR HOUSING SERVICES · JUNE 1978 EDITION · AIA®
© 1978 · THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C.

03/15/2014 03:15 FAX

tion Documents to the Owner and the date on which proposals are sought.

## ARTICLE 4
### PAYMENTS TO THE ARCHITECT

**4.1**   An initial payment as set forth in Paragraph 9.1 is the minimum payment under this Agreement.

**4.2**   Subsequent payments-for-basic-services-shall be made monthly and shall be in proportion to services performed within each Phase.

**4.3**   When compensation is based on a percentage of Construction Cost, and any portions of the Project are deleted or otherwise not constructed, compensation for such portions of the Project shall be payable to the extent services are performed on such portions, in accordance with the schedule set forth in Subparagraph 9.2.2 based on (1) the lowest bona fide bid or negotiated proposal, or (2) if no such bid or proposal is received, the most recent Statement of Probable Construction Cost or other cost estimate as described in Subparagraph 2.6.

**4.4**   Reimbursable Expenses include actual expenditures made by the Architect in the interest of the Project for:

   .1   expenses of transportation and living expenses in connection with out-of-town travel, authorized by the Owner,

   .2   long distance communications,

   .3   fees paid for securing approval of authorities having jurisdiction over the Project,

   .4   reproductions,

   .5   postage and handling of Drawings and Specifications,

   .6   renderings and models requested by the Owner,

   .7   expense of overtime work requiring higher than regular rates, if authorized by the Owner,

   .8   expense of any additional insurance coverage or limits, including professional liability insurance, requested by the Owner in excess of that normally carried by the Architect and the Architect's consultants.

**4.5**   Payments on account of the Architect's Additional Services and for Reimbursable Expenses as defined in Paragraph 4.4 shall be made monthly upon presentation of the Architect's statement of services rendered or expenses incurred.

**4.6**   No deductions shall be made from the Architect's compensation on account of sums withheld from payments to contractors.

**4.7**   If the Project is suspended or abandoned in whole or in part for more than three months, the Architect shall be compensated for all services performed prior to receipt of written notice from the Owner of such suspension or abandonment, together with Reimbursable Expenses then due and all Termination Expenses as defined in Paragraph 7.4.   If the Project is resumed after being suspended for more than three months, the Architect's compensation shall be equitably adjusted.

## ARTICLE 5
### OWNERSHIP AND USE OF DOCUMENTS

**5.1**   Drawings and Specifications as instruments of service are and shall remain the property of the Architect whether the Project for which they are made is executed or not. The Owner shall be permitted to retain copies, including reproducible copies, of Drawings and Specifications for information and reference in connection with the Owner's use and occupancy of the Project. The Drawings and Specifications shall not be used by the Owner on other projects, for additions to this Project, or for completion of this Project by others provided the Architect is not in default under this Agreement, except by agreement in writing and with appropriate compensation to the Architect.

**5.2**   Submission or distribution to meet official regulatory requirements or for other purposes in connection with the Project is not to be construed as publication in derogation of the Architect's rights.

## ARTICLE 6
### ARBITRATION

**6.1**   All claims, disputes and other matters in question between the parties to this Agreement, arising out of or relating to this Agreement or the breach thereof, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise. No arbitration, arising out of or relating to this Agreement, shall include, by consolidation, joinder or in any other manner, any additional person not a party to this Agreement except by written consent containing a specific reference to this Agreement and signed by the Architect, the Owner, and any other person sought to be joined. Any consent to arbitration involving an additional person or persons shall not constitute consent to arbitration of any dispute not described therein. This Agreement to arbitrate and any agreement to arbitrate with an additional person or persons duly consented to by the parties to this Agreement shall be specifically enforceable under the prevailing arbitration law.

**6.2**   In no event shall the demand for arbitration be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations.

**6.3**   The award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

## ARTICLE 7
### TERMINATION OF AGREEMENT

**7.1**   This Agreement may be terminated by either party upon seven days' written notice should the other party fail substantially to perform in accordance with its terms through no fault of the party initiating the termination.

**7.2**   This Agreement may be terminated by the Owner upon at least seven days' notice to the Architect in the event that the Project is permanently abandoned.

**7.3**   In the event of termination not the fault of the Architect, the Architect shall be compensated for all services performed to termination date, together with Re-

Imbursable Expenses then due and all Termination Expenses as defined in Parargaph 7.4.

7.4    Termination Expenses include expenses directly attributable to termination for which the Architect is not otherwise compensated, plus an amount computed as a percentage of the total compensation earned to the time of termination, as follows:

.1  20 percent if termination occurs during the Design Phase, or

.2  10 percent if termination occurs during the Construction Documents Phase, or

.3  5 percent if termination occurs during any subsequent phase.

## ARTICLE 8

### MISCELLANEOUS PROVISIONS

8.1    This Agreement shall be governed by the law of the principal place of business of the Architect.

8.2    As between the parties to this Agreement: as to all acts or failures to act by either party to this Agreement, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than the relevant Date of Substantial Completion of the Work, and as to any acts or failures to act occurring after the relevant Date of Substantial Completion, not later than the date of issuance of the final Certificate for Payment.

8.3    The Owner and the Architect, respectively, bind themselves, their partners, successors, assigns and legal representatives to the other party to this Agreement and to the partners, successors, assigns and legal representatives of such party with respect to all covenants of this Agreement. Neither the Owner nor the Architect shall assign, sublet or transfer any interest in this Agreement without the written consent of the other.

8.4    This Agreement represents the entire and integrated agreement between the Owner and the Architect and supersedes all prior negotiations, representations or agreements, either written or oral. This Agreement may be amended only by written instrument signed by both Owner and Architect.

AIA DOCUMENT B181 · OWNER-ARCHITECT AGREEMENT FOR HOUSING SERVICES · JUNE 1978 EDITION · AIA®
© 1978 · THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., W.

# ARTICLE 9
## BASIS OF COMPENSATION

he Owner shall compensate the Architect for the Services provided, in accordance with Article 4, Payments to the rchitect, and the other Terms and Conditions of this Agreement, as follows:

**.1**   AN INITIAL PAYMENT of                    ----00----                    dollars ($ --00--
sha' be made upon execution of this Agreement and credited to the Owner's account as follows:

**.2**   BASIC COMPENSATION

**.2.1**   FOR BASIC SERVICES, as described in Paragraphs 1.1 through 1.4 or identified as such in Article 10, Basic Compensation shall be computed as follows:

*(Here insert basis of compensation, including fixed amounts, multiples or percentages, and identify Phases to which particular methods of compensation apply, if necessary.)*

**6% OF THE CONTRACT PRICE NOT TO EXCEED $95,000.00**

**.2.2**   Where compensation is based on a Stipulated Sum or Percentage of Construction Cost, payments for Basic Services shall be made as provided in Subparagraph 4.2 so that Basic Compensation for each Phase shall equal the following percentages of the total Compensation payable:

*(Include any additional phases as appropriate.)*

Design Phase:                                                        percent (   %)
Cor·truction Documents Phase:                            percent (75%)
Bic ing or Negotiation Phase:                              percent (80%)
Construction Phase:                                              percent (100%)

**.3**   FOR ADDITIONAL SERVICES provided under Paragraph 1.5 or identified as such in Article 10, compensation shall be computed as follows:

*(Here insert basis of compensation, including rates and/or multiples of Direct Personnel Expense for Principals, consultants and employees. Identify specific types of consultants in Article 10, if required.)*

**.4**   Payments due the Architect and unpaid under this Agreement shall bear interest from the date payment is due at the rate entered below, or in the absence thereof, at the legal rate prevailing at the principal place of business of the Architect.

*(Here insert any rate of interest agreed upon.)*

### 1.5%

*(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's and Architect's principal places of business, the location of the Project and elsewhere may affect the validity of this provision. Specific legal advice should be obtained with respect to deletion, modification, or other requirements such as written disclosures or waivers.)*

**5**   The Owner and the Architect agree in accordance with the Terms and Conditions of this Agreement that:

**5.1**   IF THE SCOPE of the Project or of the Architect's Services is changed materially, the amounts of compensation shall be equitably adjusted.

**5.2**   IF THE SERVICES covered by this Agreement have not been completed within TWENTY-FOUR ( 24 ) months of the date hereof, through no fault of the Architect, the amounts of compensation, rates and multiples set orth herein shall be equitably adjusted.

DOCUM   T B181 · OWNER-ARCHITECT AGREEMENT FOR HOUSING SERVICES · JUNE 1978 EDITION · AIA®
1/8 · TH  AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006                    B181-1978   6

## ARTICLE 10
### OTHER CONDITIONS OR SERVICES

*(Describe any services not included above which are to be performed by the Architect or Owner. State whether services to be provided by the Architect are Basic Services or Additional Services.)*

PRINCIPAL'S TIME AT THE FIXED RATE OF FORTY DOLLARS ($40.00) PER HOUR.  FOR THE PURPOSES OF THIS AGREEMENT, THE PRINCIPALS ARE:  L.A. BAKER AIA ARCHITECT.

TECHNICAL LEVEL II AT THE FIXED RATE OF TWENTY DOLLARS ($20.00) PER HOUR. FOR THE PURPOSES OF THIS AGREEMENT, TECHNICAL LEVEL PERSONNEL INCLUDE: SENIOR DRAFTSMAN.

TECHNICAL LEVEL III AND CLERICAL TIME AT THE FIXED RATE OF SIXTEEN DOLLARS ($16.0( PER HOUR.  FOR PURPOSES OF THIS AGREEMENT, TECHNICAL LEVEL III AND CLERICAL PERSONNEL INCLUDE:  JR. DRAFTSMAN AND CLERICAL.

"PRINCIPALS AND EMPLOYEES TIME AT A MULTIPLE OF ONE AND THIRTY-THREE (1.33) TIMES THEIR DIRECT PERSONNEL EXPENSE AS DEFINED IN ARTICLE 4."

4.2  SUBSEQUENT PAYMENTS FOR BASIC SERVICES SHALL ACCSUE MONTHLY AND SHALL BE IN PROPORTION TO SERVICES PERFORMED WITHIN EACH PHASE.  PAYMENT SHALL BE MADE IN ACCORDANCE WITH THE ABOVE AT SUCH TIME AS FUNDS ARE MADE AVAILABLE BY THE SECRETARY OF HOUSING AND URBAN DEVELOPMENT.

This Agreement entered into as of the day and year first written above.

| OWNER | ARCHITECT |
|---|---|
| HOPKINTON HOUSING ASSOCIATION INC. | L.A. BAKER AIA ARCHITECT |
| | POTTER HILL RD. |
| HOPE VALLEY, RI 02832 | WESTERLY, RI 02891 |

7   B181-1978         AIA DOCUMENT B181 • OWNER-ARCHITECT AGREEMENT FOR HOUSING SERVICES • JUNE 1978 EDITION • AIA®
© 1978 • THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006

FHA FORM NO 3428-A
Jan. 1970

U S DEPARTMENT   OF HOUSING AND URBAN DEVELOPMENT

CONSTRUCTION CONTRACT -- COST PLUS

THIS AGREEMENT, made the _____ day of __June__ 19 85 by and between _____
Housing Systems, Inc., A Rhode Island Corporation _____
_____ (hereinafter called the
Contractor') and  Harrington Housing Association, Inc., a Rhode Island non-profit ___
Corporation
(hereinafter called the 'Owner')

WITNESSETH, That the Contractor and the Owner, for the consideration hereinafter set out, agree as follows:

### Article 1 - Scope of Contract

A.   The Contract between the parties is set forth in the "Contract Documents" which consists of this Agreement, the Drawings and Specifications, to which are attached the current edition of AIA Document A201, "General Conditions of the Contract for Construction", and FHA Form No. 2554, "Supplementary Conditions of the Contract for Construction". The provisions of this Instrument and the said FHA Supplementary Conditions take precedence over all inconsistent provisions in the said AIA General Conditions. Any provisions in said AIA General Conditions whereby the undersigned waive all rights against each other for damages caused by fire and other perils covered by insurance shall be inapplicable. This Contract constitutes the entire agreement between the parties and any previously existing contract concerning the work contemplated by the Contract Documents is hereby revoked.

B.   The Contractor shall furnish all of the materials and perform all of the work (within the property lines) shown on, and in accordance with, the Drawings and specifications entitled  Canonchet Cliffs _____

Project No.   016-EH042-WAH-18 _____ . dated _____

C.   The Drawings, which are numbered __See Exhibit A____ , and the Specifications, the pages of which are numbered __See Exhibit A____ have been prepared by  Lloyd Baker, AIA Architects,
Potter Hill Road, Westerly, Rhode Island
The Architect administering the Construction Contract (hereinafter, and elsewhere in the Contract Documents, referred to as the Architect) is __Lloyd Baker____

D.   A master set of said Drawings and Specifications, identified by the parties hereto and by the Design Architect, the Architect, and the Contractor's Surety or Guarantor have been placed on file with the Department of Housing and Urban Development ("HUD"), and shall govern in all matters which arise with respect to such Drawings and Specifications.

E.   Changes in the Drawings and Specifications or any terms of the Contract Documents, or orders for extra work, or changes by altering or adding to the work, which will result in any net construction cost increase, or will change the design concept, or which will result in a net cumulative construction cost decrease of more than 2% of the contract amount may be effected only with the prior written approval of HUD under such conditions as HUD may establish.

### Article 2 - Time

A.   The work to be performed under this Contract shall be commenced within __10__ days of this Agreement, and shall be completed by January  X,X,X 85. The time by which the work shall be completed may be extended in accordance with the terms of the said AIA General Conditions only with the prior written approval of HUD.

B.   The Contractor shall correct any defects due to faulty materials or workmanship which appear within one year from the date of substantial completion.

C.   If the work is not substantially completed in accordance with the Drawings and Specifications, including any authorized changes, by the date specified above, or by such date to which the contract time may be extended, the maximum sum stated in Article 3A(1) below shall be reduced by $ _____ as liquidated damages, for each day of delay until the date of substantial completion. The total of any such liquidated damages shall be reduced by an amount equal to the project's net operating income (as defined and determined by HUD) for the period upon which liquidated damages are based.

D.   The date of substantial completion shall be the date the HUD Representative signs the HUD Representative's trip report (HUD-5379) which indicates construction is complete and which report is subsequently endorsed by the Chief Architect as being the final inspection report.

### Article 3 - Payments

A.   (1)  Subject to the provisions here under set out, the Owner shall pay to the Contractor for the performance of this Contract the following items in cash:

(a)   The actual cost of construction as defined in Article 10 below, plus

(b)   A fee of $ _____

PLAINTIFF'S
EXHIBIT
12

- 7 -

In no event however, shall the total cash payable ... in this paragraph (1) exceed ___ 1,704,063.05

    (2)   In addition to any cash for provided for in paragraph (1) Owner shall pay to the Contractor by means of cash, other than the following:

        (a)   A note in form prescribed by HUD in the amount of $ _____ N/A

        (b)   100% Performance Payment Bond

    (3)   If, upon completion, the Contractor shall have received cash payments in excess of (a) the actual cost of construction, plus (b) the cash fee specified in paragraph (1), plus the additional amount to be paid under the provisions of paragraph (3), all such excess shall be refunded to the Owner.

**B.**   Each month after the commencement of work hereunder, the Contractor shall make a monthly request for payment (in quadruplicate on FHA Form No., 2448) by the Owner for work done during the preceding month. Each request for payment shall be filed at least ___10___ days before the date payment is desired. Subject to the approval of HUD, the Contractor shall be entitled to payment thereon in an amount equal to (1) the total value of classes of work acceptably completed; plus (2) the value of materials and equipment not incorporated in the work, but delivered to and suitably stored at the site; less (3) ten percent (10%) hold-back and less prior payments. The "values" of both (1) and (2) shall be computed in accordance with the amounts assigned to classes of the work in the "Contractor's and/or Mortgagor's Cost Breakdown", attached hereto as Exhibit "A". The Contractor agrees that no materials or equipment required by the Specifications will be purchased under a conditional sale contract or with the use of any security agreement or other vendor's title or lien retention instrument.

**C.**   The balance due the Contractor hereunder shall be payable upon the expiration of 30 days after the work hereunder is fully completed, provided the following have occurred:

    (1)   All work hereunder requiring inspection by municipal or other governmental authorities having jurisdiction has been inspected and approved by such authorities and by the rating or inspection organization, bureau, association or office having jurisdiction;

    (2)   All certificates of occupancy, or other approvals, with respect to all units of the project have been issued by State or local governmental authorities having jurisdiction; and

    (3)   Permissions to Occupy (FHA From No., 2485) for all units of the project have been issued by HUD.

**D.**   With its final application for payment by the Owner, the Contractor shall disclose, on a form prescribed by HUD, all unpaid obligations contracted in connection with the work performed under this Contract. The Contractor agrees that within 15 days following receipt of final payment, it will pay such obligations in cash and furnish satisfactory evidence of such payment to the Owner.

### Article 4 - Receipts and Releases of Liens

The Owner may require the Contractor to attach to each request for payment its acknowledgement of payment and all subcontractors' and materialmen's acknowledgements of payment for work done and materials, equipment and fixtures furnished through the date covered by the previous payment. Concurrently with the final payment, the Owner may require the Contractor to execute a waiver or release of lien for all work performed and materials furnished hereunder, and may require the Contractor to obtain similar waivers or releases from all subcontractors and materialmen.

### Article 5 - Requirements of Contractor

**A.**   The Contractor shall furnish, at its own expense, all building and other permits, licenses, tools, equipment and temporary structures necessary for the construction of the project. The Contractor shall give all required notices and shall comply with all applicable codes, laws, ordinances, rules and regulations, and protective covenants, and with the current regulations of the National Board of Fire Underwriters, wherever applicable. The Contractor further shall comply with the provisions of the "Manual of Accident Prevention in Construction" of the Associated General Contractors of America. The Contractor shall immediately notify HUD of the delivery of all permits, licenses, certificates of inspection, certificates of occupancy, and any other such certificates and instruments required by law, regardless of to whom issued, and shall cause them to be displayed to HUD upon request.

**B.**   If the Contractor observes that the Drawings and Specifications are at variance with any applicable codes, laws, ordinances, rules or regulations, or protective covenants, it shall promptly notify the Architect in writing, and any necessary changes shall be made as provided in this Contract for changes in the Drawings and Specifications. If the Contractor performs any work knowing it to be contrary to such codes, laws, ordinances, rules or regulations, or protective covenants, without giving such notice to the Architect, it shall bear all costs arising therefrom.

**C.**   Upon completion of construction, the Contractor shall furnish to the Owner a survey showing the location on the site of all improvements constructed thereon, and showing the location of all water, sewer, gas and electric lines and mains, and of all existing utility easements. Such survey shall be prepared by a licensed surveyor who shall certify that the work is installed and erected entirely upon the land covered by the mortgage and within any building restriction lines on said land, and does not overhang or otherwise encroach upon any easement or right-of-way of others. In addition, if the Owner shall so require, the Contractor shall furnish a survey with each application for payment for any improvements, including structures and utilities, not theretofore located on a survey.

E.   The Contractor agrees that payment for proper services for the maintenance of all landscaping which may be required by the Drawings and Specifications will, in such cases as has been required by the Contract shall receive written notice from HUD that such landscaping has been finally completed. The Owner hereby agrees to make available to the Contractor, for such purpose, without cost to the latter, such facilities as water, hose and sprinklers.

### Article 6 - Assurance of Completion

The Contractor shall furnish to the Owner assurance of completion of the work in the form of _____
_____ 10% Performance Payment Bond _____
Such assurance of completion shall run to the Owner and HUD, as obligees.

### Article 7 - Waiver of Lien or Claim

The Contractor shall file no mechanic's or materialmen's lien or maintain any claim against the Owner's real estate or improvements for or on account of any work done, labor performed or materials furnished under this Contract.

### Article 8 - Right of Entry and Interpretation

A.   HUD, its agents or assigns, at all times during construction, have the right of entry and free access to the project and the right to inspect all work done and materials, equipment and fixtures furnished, installed or stored in and about the project. For such purpose, the Contractor shall furnish such enclosed working space as HUD may require and find acceptable as to location, size, accommodations and furnishings.

B.   HUD shall also have the right to interpret the Contract Documents and to determine compliance therewith.

### Article 9 - Assignments, Subcontracts and Termination

A.   This Contract shall not be assignable by either party without prior written consent of the party and HUD, except that the Owner may assign the Contract, or any rights hereunder, to HUD.

B.   The Contractor shall not subcontract all of the work to be performed hereunder without the prior written consent of the Owner and HUD.

C.   Upon request by the Owner, or HUD, the Contractor shall disclose the names of all persons with whom it has contracted or will contract with respect to work to be done and materials and equipment to be furnished hereunder.

D.   The Contractor understands that the work under this contract is to be financed by a building loan to be secured by a mortgage and subject to the terms of a Building Loan Agreement between the Owner and HUD.

The Contractor further understands that said Building Loan Agreement provides that in the event of the failure of the Owner to perform its obligations to HUD thereunder, HUD may, as attorney-in-fact for the Owner, undertake the completion of the project in accordance with this Contract. In the event HUD elects not to undertake such completion, the Contractor's obligations under this Contract shall terminate.

### Article 10 - Certification of Actual Cost

A.   The "actual cost of construction", as used in Article 3 above, shall include all items of cost and expense incurred by the Contractor in the performance of this Contract, including costs and expenses of labor, materials for construction, equipment and fixtures, field engineering, sales taxes, workmen's compensation insurance, social security, public liability insurance, job overhead expenses, and all other expenses directly connected with construction, and including general overhead expenses, but excluding kickbacks, rebates or discounts received in connection with the construction of the project; and excluding any return on or cost of the Contractor's working capital, such return on or cost of working capital being a part of or to be paid from the Contractor's fee or profit.

B.   The Contractor shall keep accurate records of account of the said actual cost of construction, and shall, upon demand, make such records and in-oices, receipts, subcontracts and other information pertaining to the construction of the project available for inspection by the Owner and HUD.

C.   With its final application for payment, the Contractor shall furnish to the Owner a completed "Contractor's Certificate of Actual Cost", which shall be accompanied and supported by an independent public accountant's certificate as to actual cost (in form acceptable to HUD).

D.   The Contractor shall include in all subcontracts, equipment leases and purchase orders a provision requiring the subcontractor, equipment lessor or supplier to certify its costs incurred in connection with the project, in the event HUD determines there is identity of interest between the Owner or the Contractor and any such subcontractor, equipment lessor or supplier.

IN WITNESS WHEREOF, the parties to these presents have executed this contract in six (6) counterparts, each of which shall be deemed an original, in the year and day first above mentioned.

(Seal)
ATTEST:

_____                    Hopkinton Housing Association, Inc.
(Secretary)                                   Hopkinton, Rhode Island
                                                        (Owner)

_____               By   _____
(Witness)                                          Brenda Pukas

                                              President
                                                 (Title)


(Seal)
                                              Housing Systems, Inc.

_____               By   _____
(Secretary)                                   (John D'Angelo, President)
                                                        (Title)

_____                    _____
(Witness)                                           (Witness)
                                              10 Monticello Place
                                              Pawtucket, Rhode Island     02861
                                                       (Address)


NOTE:     Secretary of the Owner should attest.   If Contractor is a corporation, Secretary should attest.

Addendum to Form 2442A-EH

The Contractor acknowledges that this Agreement has resulted from sole-source negotiation rather than from competitive bid.

The Contractor has conducted a full and independent inspection of the site and acknowledges that it has taken steps reasonably necessary to ascertain the nature and location of the work, and that it has investigated and satisfied itself as to the general and local conditions which can affect the work or its cost. The Contractor also acknowledges that it has satisfied itself as to the character, quality and quantity of surface and subsurface materials or obstacles to be encountered insofar as this information is reasonably ascertainable from an inspection of the site, including all exploratory work (such as test borings) done by or on behalf of the Contractor, as well as from the drawings and specifications made a part of this Contract. Any failure of the Contractor to take the actions described and acknowledged in this paragraph will not relieve the Contractor from responsibility for estimating properly the difficulty and cost of successfully performing the work or for proceeding to successfully perform the work without additional expense to the Owner, or HUD.

The Contractor warrants to the Owner and HUD that the work, when completed, will comply fully with all HUD requirements and applicable building and safety codes, regulations, and construction requirements imposed or enforced by any governmental agencies and in existence on the date of execution of this agreement, without regard to any errors, omissions or deficiencies in the drawings and specifications.

The Contractor further agrees that it will not be entitled to any increase in the contract price because of changes in the drawings and specifications arising out of errors, omissions or deficiencies in the drawings and specifications, and that it will not assert any claim against the Owner or HUD in connection therewith.

ACKNOWLEDGED:

_Housing Systems Inc._

_____     6/18/8_
CONTRACTOR                    DATE

_Highlands Hsg. Assoc. by_

_____     18 June '58_
OWNER                         DATE

U S DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
HOUSING - FEDERAL HOUSING COMMISSIONER

## CONSTRUCTION CONTRACT INCENTIVE PAYMENT

In any case where there is no identity of interest between the Owner and the Contractor, the parties may amend the Construction Contract to provide for the payment of an additional sum to the Contractor as an incentive for completing the project earlier than the completion date specified in the contract

The Construction Contract – Lump Sum (Form HUD-92442) may be amended by adding the following paragraph by rider:

### Article 3 – Contract Sum and Payments (cont.)

If the work is completed prior to the time for completion specified in the contract, the Owner shall pay the Contractor, in addition to the contract sum stated herein, an amount equal to __N/A__ * percent of the amount by which the total of the Commissioner's estimates of interest, real estate taxes, insurance and mortgage insurance premium during construction in the amount of $ __N/A__ ** exceeds the Owner's total actual cost of such items as identified to and approved b; the Commissioner from the date of commencement of construction through the 60th day after the HUD representative endorses the Final HUD REPRESENTATIVES Trip Report (Form HUD-5379) showing the 100% completion.

The Construction Contract – Cost Plus – (Form HUD-92442-A) may be amended by striking paragraph A(3) from Article 3 and adding the following paragraphs by rider:

### Article 3 – Payments (cont.)

(3) If the work is completed prior to the time for completion specified in this contract, the Owner shall make an incentive payment to the Contractor. The amount of the payment shall be ascertained according to the instructions on the attachment entitled Incentive Payment Computation which is made a part hereof.

(4) In no event shall the cash fee specified in paragraph (1), plus any amounts specified in paragraph (2) to be paid by means other than cash, plus any incentive payment under the provisions of paragraph (3) exceed $ __190,091__ ***.

(5) If, upon completion, the Contractor shall have received cash payments in excess of (a) the actual cost of construction, plus (b) the cash fee specified in paragraph (1), plus the incentive payment under the provisions of paragraph (3), all such excess shall be refunded to the Owner.

*Not to exceed 50%.*

**Insert here that portion of the sum of interest, taxes, insurance, and Mortgage Insurance Premium that appear in Section G of Form HUD-92264 that are attributable to the construction period. For example, if the construction period also shown in Section G of Form HUD-92264 is estimated to be 15 months, interest, taxes, and insurance have been calculated for a 17 month period. Only a portion (15/17) may be included in the savings computation for these items. Similarly, the MIP must be prorated and 15/24's would be included as the items computed on an annual basis. In addition, if there has been a change in the interest rate charged for the construction period, the dollar amount included in Section G of Form HUD-92264 must be adjusted and the adjusted amount reflected in the savings computation.*

***The amount is to be computed by subtracting the amount of the Builder's Profit from the total Estimated Development Cost that appears in Section G, Form HUD-92264, and multiply the result by ten (10) percent.*

*( See Reverse )*

HUD-92442 (8-80)

## INCENTIVE PAYMENT COMPUTATION

**SOFT COST COMPUTATIONS:**

STEP 1    (a)    Enter the sum of HUD's estimated cost of interest, real estate taxes, insurance and Mortgage Insurance Premium from Section C, Form HUD-92264.** *(See Reverse Side).*      $_____

         (b)    Enter the mortgagor's certified cost of these same items as approved by the Commissioner from date of commencement of construction up to but not exceeding the day the HUD representative signs the final HUD Representative's Trip Report.      $_____

         (c)    Subtract 1(b) from 1(a). If 1(b) exceeds 1(a) enter 0.      $_____

**CONSTRUCTION COST COMPUTATIONS:**

STEP 2    (a)    Enter Lesser of (1) HUD's estimated cost of physical construction *(as defined in Note 1 below or (2) Cash Upset price less the cash fee set out in Article 3(a) of the Construction Contract.)*      $_____

         (b)    Enter HUD's estimated amount of the net increase in cost or net decrease in cost of approved construction changes from the final Form HUD-92437.      $_____

         (c)    Enter sum of 2(a) and 2(b) if approved change orders resulted in construction cost increase. If approved changes resulted in a decrease in cost, subtract 2(b) from 2(a) and enter the difference.      $_____

         (d)    Enter actual certified cost of physical construction as approved by the Commissioner *(excluding Builder's Profit.)*      $_____

         (e)    If 2(c) exceeds 2(d) enter difference here. If 2(d) exceeds 2(c) enter 0.      $_____

**INCENTIVE PAYMENT COMPUTATIONS:**

STEP 3    (a)    Enter sum of STEP 1(c) and 2(c).      $_____

         (b)    Multiply 3(a) by _____ 50 % *(Note 2)* to obtain amount of incentive payment.      $_____

---

*NOTE 1:*   *HUD's estimate of the cost of physical construction shall be determined by adding together the following items that appear in Section G of Form HUD-92264: Total Land Improvements, Total Structures, General Requirements, Builder's General Overhead, Bond Premium and Other Fees.*

*NOTE 2:*   *This blank should be completed on or before initial closing of the loan and the percentage to be inserted must not exceed 50%.*

DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

AMENDMENT TO AIA DOCUMENT B181, STANDARD FORM OF AGREEMENT
BETWEEN OWNER AND ARCHITECT FOR HOUSING SERVICES

The provisions of this amendment supersede and void all inconsistent provisions of the Agreement.

1.  The Owner and the Architect represent that they are familiar with HUD/FHA requirements, including the Minimum Property Standards, as set forth in publications given to them by HUD/FHA for this Project and will perform all services in accordance with the applicable requirements of HUD/FHA.

2.  The Owner and the Architect recognize the interest of the Mortgagee and HUD/FHA and any action or determination by either the Owner or the Architect is subject to acceptance or rejection by the Mortgagee and by HUD/FHA.

3.  No portion of the Architect's Services and responsibilities or the Owner's responsibili-ties shall be sublet or delegated to anyone  not acceptable to HUD/FHA.

4.  The Architect will advise HUD/FHA as well as the Owner of any omissions, substitutions, defects and deficiencies observed in the Work of the Contractor.

5.  The Architect shall issue Certificates of Payment and Certificates of Substantial Completion.  These certificates shall be in the form prescribed by HUD/FHA.

6.  The Architect will furnish copies of all field orders to the Mortgagee and HUD/FHA in addition to the owner.

7.  The agreement shall not be terminated without five days prior written Notice to the Mortgagee and HUD/FHA.

8.  The Owner and the Architect shall recognize as a valid reason for termination, any request by request by HUD/FHA for termination because of inadequate performance, undue delay or misrepresentation which may make the further services of the Architect unacceptable to HUD/FHA.

9.  If the project for which the drawings and specifications prepared by the Architect has not been completed and there is a default or foreclosure, the Mortgagee or HUD/FHA may use the drawings and specifications to complete construction of the project without additional cost.

OWNER _____     ARCHITECT _____

DATE _____     DATE _____

WARNING:  Title 18 U.S.C. 1001, provides in part that whoever knowingly and willfully makes or uses a document containing any false, fictitious, or fraudulent statement or entry, in any matter in the jurisdiction of any department or agency of the United States, shall be fined not more than $10,000 or imprisoned for not more than five years or both.

PLAINTIFF'S
EXHIBIT

C

Terms and Conditions of Agreement Between Owner and Architect

## ARTICLE 1
### ARCHITECT'S SERVICES
### AND RESPONSIBILITIES

The Architect's Basic Services are as described under the four Phases identified below and in Article 10, and unless otherwise provided in Article 10 include normal structural, mechanical and electrical engineering services.

**1.1   DESIGN PHASE**

**1.1.1**   The Architect shall review with the Owner alternative approaches to design and construction of the Project.

**1.1.2**   Based on the mutually accepted program, the Architect shall prepare, for approval by the Owner, Design Documents consisting of drawings and other documents appropriate for the Project.

**1.2   CONSTRUCTION DOCUMENTS PHASE**

**1.2.1**   Based on the approved Design Documents, the Architect shall prepare, for approval by the Owner, Construction Documents consisting of Drawings and Specifications setting forth in detail the requirements for the construction of the Project.

**1.2.2**   The Architect shall assist the Owner in connection with the Owner's responsibility for filing documents required for the approval of governmental authorities having jurisdiction over the Project.

**1.3   BIDDING OR NEGOTIATION PHASE**

**1.3.1**   Unless provided in Article 10, the Architect, following the Owner's approval of the Construction Documents, shall assist the Owner in obtaining bids or negotiated proposals and in awarding contracts for construction.

**1.4   CONSTRUCTION PHASE—ADMINISTRATION OF THE CONSTRUCTION CONTRACT**

**1.4.1**   The Construction Phase will commence with the award of the Contract for Construction and will terminate when final payment to the Contractor is due, or in the absence of a final Certificate for Payment or of such due date, sixty days after the Date of Substantial Completion of the Work, whichever occurs first.

**1.4.2**   Unless otherwise provided in this Agreement and incorporated in the Contract Documents, the Architect shall provide administration of the Contract for Construction as set forth below and in the edition of AIA Document A201, General Conditions of the Contract for Construction, current as of the date of this Agreement.

**1.4.3**   The Architect shall be a representative of the Owner during the Construction Phase. Instructions to the Contractor shall be forwarded through the Architect.

**1.4.4**   The Architect shall visit the site at intervals appropriate to the stage of construction or as otherwise agreed by the Architect in writing to become generally familiar with the progress and quality of the Work and to determine in general if the Work is proceeding in accordance with the Contract Documents. However, the Architect shall not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. On the basis of such on-site observations as an architect, the Architect shall keep the Owner informed of the progress and quality of the Work, and shall endeavor to guard the Owner against defects and deficiencies in the Work of the Contractor.

**1.4.5**   The Architect shall not have control or charge of and shall not be responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work, for the acts or omissions of the Contractor, Subcontractors or any other persons performing any of the Work, or for the failure of any of them to carry out the Work in accordance with the Contract Documents.

**1.4.6**   The Architect shall at all times have access to the Work wherever it is in preparation and progress.

**1.4.7**   The Architect shall determine the amounts owing to the Contractor based on observations at the site and on evaluations of the Contractor's Applications for Payment, and shall issue Certificates for Payment in such amounts.

**1.4.8**   The issuance of a Certificate for Payment shall constitute a representation by the Architect to the Owner, based on the Architect's observations at the site as provided in Subparagraph 1.4.4 and on the data comprising the Contractor's Application for Payment, that, to the best of the Architect's knowledge, information and belief, the Work has progressed to the point indicated; the quality of the Work is in accordance with the Contract Documents (subject to an evaluation of the Work for conformance with the Contract Documents upon Substantial Completion, to the results of any subsequent tests required by or performed under the Contract Documents, to minor deviations from the Contract Documents correctable prior to completion, and to any specific qualifications stated in the Certificate for Payment); and that the Contractor is entitled to payment in the amount certified. However, the issuance of a Certificate for Payment shall not be a representation that the Architect has made any examination to ascertain how and for what purpose the Contractor has used the moneys paid on account of the Contract Sum.

**1.4.9**   The Architect shall be the interpreter of the requirements of the Contract Documents and the judge of the performance thereunder by both the Owner and Contractor, and shall render written decisions on all claims, disputes and other matters in question between the Owner and the Contractor. In the capacity of interpreter and judge, the Architect shall endeavor to secure faithful performance by both the Owner and the Contractor, shall not show partiality to either, and shall not be liable for the result of any interpretation or decision rendered in good faith in such capacity.

**1.4.10**   The Architect shall have authority to reject Work which does not conform to the Contract Documents, and will have authority to require special inspection or testing of the Work whenever, in the Architect's reasonable opin-

ion, it is necessary or advisable for the implementation of the intent of the Contract Documents.

**1.4.11** The Architect shall review and approve or take other appropriate action upon the Contractor's submittals such as Shop Drawings, Product Data and Samples, but only for conformance with the design concept of the Work and with the information given in the Contract Documents. Such action shall be taken with reasonable promptness so as to cause no delay. The Architect's approval of a specific item shall not indicate approval of an assembly of which the item is a component.

**1.4.12** The Architect shall prepare Change Orders for the Owner's approval and execution, and shall have authority to order minor changes in the Work not involving an adjustment in the Contract Sum or an extension of the Contract Time.

**1.4.13** The Architect shall conduct inspections to determine the Dates of Substantial Completion and final completion, and shall issue a final Certificate for Payment.

**1.4.14** The extent of the duties, responsibilities and limitations of authority of the Architect as the Owner's representative during construction shall not be modified or extended without written consent of the Owner, the Contractor and the Architect.

**1.5   ADDITIONAL SERVICES**

**1.5.1** Additional Services shall be provided if authorized or confirmed in writing by the Owner or if included in Article 10, and they shall be paid for by the Owner as provided in this Agreement.

**1.5.2** If the Owner and the Architect agree that more extensive representation at the site than is described in Paragraph 1.4 shall be provided, such additional project representation shall be provided and paid for as set forth in Article 10.

**1.6   TIME**

**1.6.1** The Architect shall perform services as expeditiously as is consistent with professional skill and care and the orderly progress of the Work.

## ARTICLE 2
### THE OWNER'S RESPONSIBILITIES

The following services and responsibilities, and any others so indicated in Article 10, shall be undertaken by the Owner.

**2.1** The Owner shall provide full information including a program, which shall set forth the Owner's design objectives, constraints and criteria.

**2.2** The Owner shall furnish a legal description and a certified land survey of the site and the services of soil engineers or other consultants when such services are deemed necessary by the Architect. Such services shall include topographic surveys, test borings, test pits, soil bearing values, percolation tests, air and water pollution tests, ground corrosion and resistivity tests, including necessary operations for determining subsoil, air and water conditions, with reports and appropriate professional recommendations.

**2.3** The Owner shall furnish structural, mechanical, chemical and other laboratory tests, inspections and re-

ports as required by law or the Contract Documents.

**2.4** The Owner shall furnish all legal, accounting and insurance counseling services as may be necessary at any time for the Project, including such auditing services as the Owner may require to verify the Contractor's Applications for Payment or to ascertain how or for what purposes the Contractor uses the moneys paid by the Owner.

**2.5** The Owner, unless otherwise provided in Article 10, shall furnish all legal, accounting, planning, estimating and other services and expenses required to prepare, present and process any application for governmental or private financing, mortgage insurance or subsidy.

**2.6** The Owner, unless otherwise provided in Article 10, shall furnish the services of a cost consultant or cost estimator to provide all construction cost data, Statements of Probable Construction Cost or other cost estimates as the Architect's work progresses.

**2.7** The services, information, surveys and reports required by Paragraphs 2.2 through 2.6 inclusive shall be furnished at the Owner's expense, and the Architect shall be entitled to rely upon the accuracy and completeness thereof.

**2.8** If the Owner observes or otherwise becomes aware of any fault or defect in the Project or nonconformance with the Contract Documents, prompt written notice thereof shall be given by the Owner to the Architect.

**2.9** The Owner shall furnish required information and shall render approvals and decisions as expeditiously as necessary for the orderly progress of the Architect's services and of the Work.

## ARTICLE 3
### CONSTRUCTION COST

**3.1   DEFINITION**

**3.1.1** The Construction Cost shall be the total cost or estimated cost to the Owner of all elements of the Project designed or specified by the Architect.

**3.1.2** The Construction Cost shall include at current market rates, including a reasonable allowance for overhead and profit, the cost of labor and materials furnished by the Owner and any equipment which has been designed, specified, selected or specially provided for by the Architect.

**3.1.3** Construction Cost does not include the compensation of the Architect and the Architect's consultants, the cost of the land, rights-of-way, or other costs which are the responsibility of the Owner as provided in Article 2.

**3.2   RESPONSIBILITY FOR CONSTRUCTION COST**

**3.2.1** It is recognized that neither the Architect nor the Owner has control over the cost of labor, materials or equipment, over the Contractor's methods of determining bid prices, or over competitive bidding, market or negotiating conditions. Accordingly, the Architect cannot and does not warrant or represent that bids or negotiated prices will not vary from any Statement of Probable Construction Cost or other cost estimate or evaluation. Any Project budget shall be adjusted to reflect any change in the general level of prices in the construction industry between the date of submission of the Construc-

tion Documents to the Owner and the date on which proposals are sought.

## ARTICLE 4
### PAYMENTS TO THE ARCHITECT

**4.1** An initial payment as set forth in Paragraph 9.1 is the minimum payment under this Agreement.

**4.2** S̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶ X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶ X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶

**4.3** When compensation is based on a percentage of Construction Cost, and any portions of the Project are deleted or otherwise not constructed, compensation for such portions of the Project shall be payable to the extent services are performed on such portions, in accordance with the schedule set forth in Subparagraph 9.2.2 based on (1) the lowest bona fide bid or negotiated proposal, or (2) if no such bid or proposal is received, the most recent Statement of Probable Construction Cost or other cost estimate as described in Subparagraph 2.6.

**4.4** Reimbursable Expenses include actual expenditures made by the Architect in the interest of the Project for:

.1 expenses of transportation and living expenses in connection with out-of-town travel, authorized by the Owner,

.2 long distance communications,

.3 fees paid for securing approval of authorities having jurisdiction over the Project,

.4 reproductions,

.5 postage and handling of Drawings and Specifications,

.6 renderings and models requested by the Owner,

.7 expense of overtime work requiring higher than regular rates, if authorized by the Owner,

.8 expense of any additional insurance coverage or limits, including professional liability insurance, requested by the Owner in excess of that normally carried by the Architect and the Architect's consultants.

**4.5** Payments on account of the Architect's Additional Services and for Reimbursable Expenses as defined in Paragraph 4.4 shall be made monthly upon presentation of the Architect's statement of services rendered or expenses incurred.

**4.6** No deductions shall be made from the Architect's compensation on account of sums withheld from payments to contractors.

**4.7** If the Project is suspended or abandoned in whole or in part for more than three months, the Architect shall be compensated for all services performed prior to receipt of written notice from the Owner of such suspension or abandonment, together with Reimbursable Expenses then due and all Termination Expenses as defined in Paragraph 7.4. If the Project is resumed after being suspended for more than three months, the Architect's compensation shall be equitably adjusted.

## ARTICLE 5
### OWNERSHIP AND USE OF DOCUMENTS

**5.1** Drawings and Specifications as instruments of ser-

vice are and shall remain the property of the Architect whether the Project for which they are made is executed or not. The Owner shall be permitted to retain copies, including reproducible copies, of Drawings and Specifications for information and reference in connection with the Owner's use and occupancy of the Project. The Drawings and Specifications shall not be used by the Owner on other projects, for additions to this Project, or for completion of this Project by others provided the Architect is not in default under this Agreement, except by agreement in writing and with appropriate compensation to the Architect.

**5.2** Submission or distribution to meet official regulatory requirements or for other purposes in connection with the Project is not to be construed as publication in derogation of the Architect's rights.

## ARTICLE 6
### ARBITRATION

**6.1** All claims, disputes and other matters in question between the parties to this Agreement, arising out of or relating to this Agreement or the breach thereof, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise. No arbitration, arising out of or relating to this Agreement, shall include, by consolidation, joinder or in any other manner, any additional person not a party to this Agreement except by written consent containing a specific reference to this Agreement and signed by the Architect, the Owner, and any other person sought to be joined. Any consent to arbitration involving an additional person or persons shall not constitute consent to arbitration of any dispute not described therein. This Agreement to arbitrate and any agreement to arbitrate with an additional person or persons duly consented to by the parties to this Agreement shall be specifically enforceable under the prevailing arbitration law.

**6.2** In no event shall the demand for arbitration be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations.

**6.3** The award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

## ARTICLE 7
### TERMINATION OF AGREEMENT

**7.1** This Agreement may be terminated by either party upon seven days' written notice should the other party fail substantially to perform in accordance with its terms through no fault of the party initiating the termination.

**7.2** This Agreement may be terminated by the Owner upon at least seven days' notice to the Architect in the event that the Project is permanently abandoned.

**7.3** In the event of termination not the fault of the Architect, the Architect shall be compensated for all services performed to termination date, together with Re-

AIA DOCUMENT B181 • OWNER-ARCHITECT AGREEMENT FOR HOUSING SERVICES • JUNE 1978 EDITION • AIA®
© 1978 • THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006

imbursable Expenses then due and all Termination Expenses as defined in Parargaph 7.4.

**7.4**    Termination Expenses include expenses directly attributable to termination for which the Architect is not otherwise compensated, plus an amount computed as a percentage of the total compensation earned to the time of termination, as follows:

.1 20 percent if termination occurs during the Design Phase, or

.2 10 percent if termination occurs during the Construction Documents Phase, or

.3 5 percent if termination occurs during any subsequent phase.

## ARTICLE 8

### MISCELLANEOUS PROVISIONS

**8.1**    This Agreement shall be governed by the law of the principal place of business of the Architect.

**8.2**    As between the parties to this Agreement: as to all acts or failures to act by either party to this Agreement,

any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than the relevant Date of Substantial Completion of the Work, and as to any acts or failures to act occurring after the relevant Date of Substantial Completion, not later than the date of issuance of the final Certificate for Payment.

**8.3**    The Owner and the Architect, respectively, bind themselves, their partners, successors, assigns and legal representatives to the other party to this Agreement and to the partners, successors, assigns and legal representatives of such party with respect to all covenants of this Agreement. Neither the Owner nor the Architect shall assign, sublet or transfer any interest in this Agreement without the written consent of the other.

**8.4**    This Agreement represents the entire and integrated agreement between the Owner and the Architect and supersedes all prior negotiations, representations or agreements, either written or oral. This Agreement may be amended only by written instrument signed by both Owner and Architect.

AIA DOCUMENT B181 • OWNER-ARCHITECT AGREEMENT FOR HOUSING SERVICES • JUNE 1978 EDITION • AIA®
© 1978 • THE AMERICAN INSTITUTE OF ARCHITECTS. 1735 NEW YORK AVENUE, N W., WASHINGTON, D C. 20006

## ARTICLE 9
### BASIS OF COMPENSATION

The Owner shall compensate the Architect for the Services provided, in accordance with Article 4, Payments to the Architect, and the other Terms and Conditions of this Agreement, as follows:

**9.1** AN INITIAL PAYMENT of       ---00----         dollars ($ --00-- shall be made upon execution of this Agreement and credited to the Owner's account as follows:

**9.2** BASIC COMPENSATION

**9.2.1** FOR BASIC SERVICES, as described in Paragraphs 1.1 through 1.4 or identified as such in Article 10, Basic Compensation shall be computed as follows:

*(Here insert basis of compensation, including fixed amounts, multiples or percentages, and identify Phases to which particular methods of compensation apply, if necessary.)*

### 6% OF CONTRACT PRICE NOT TO EXCEED $115,000.00 **



** At time of initial endorsement the amount of $106,000.00 (the budgeted amount) is carried.; but an additional amount up to $9,000.00 will be payable in the event there are savings in the contingency allowance, as determined at Cost Certification.

**9.2.2** Where compensation is based on a Stipulated Sum or Percentage of Construction Cost, payments for Basic Services shall be made as provided in Subparagraph 4.2 so that Basic Compensation for each Phase shall equal the following percentages of the total Compensation payable:

*(Include any additional phases as appropriate.)*

| | |
|---|---|
| Design Phase: | percent (0 %) |
| Construction Documents Phase: | percent (0 %) |
| Bidding or Negotiation Phase: | percen.775%) |
| Construction Phase: | percent 100%) |

**9.3** FOR ADDITIONAL SERVICES provided under Paragraph 1.5 or identified as such in Article 10, compensation shall be computed as follows:

*(Here insert basis of compensation, including rates and/or multiples of Direct Personnel Expense for Principals, consultants and employees. Identify specific types of consultants in Article 10, if required.)*

**9.4** Payments due the Architect and unpaid under this Agreement shall bear interest from the date payment is due at the rate entered below, or in the absence thereof, at the legal rate prevailing at the principal place of business of the Architect.

*(Here insert any rate of interest agreed upon.)*

### 1.5%

*(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's and Architect's principal places of business, the location of the Project and elsewhere may affect the validity of this provision. Specific legal advice should be obtained with respect to deletion, modification, or other requirements such as written disclosures or waivers.)*

**9.5** The Owner and the Architect agree in accordance with the Terms and Conditions of this Agreement that:

**9.5.1** IF THE SCOPE of the Project or of the Architect's Services is changed materially, the amounts of compensation shall be equitably adjusted.

**9.5.2** IF THE SERVICES covered by this Agreement have not been completed within **TWENTY FOUR** ( 24 ) months of the date hereof, through no fault of the Architect, the amounts of compensation, rates and multiples set forth herein shall be equitably adjusted.